UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARTHA PENA, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 04-10350 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| JO ANNE B. BARNHART ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to the disputed issue(s).

**Administrative Proceedings**

Plaintiff filed her disability insurance benefits application on February 27, 2003, alleging that she had been disabled since November 21, 2002, the date of her early retirement, due to herniated discs in her lower back, numbness in both arms, a pinched nerve affecting her legs, and arthritis. [JS 2; Administrative Record ("AR") 46, 54, 78]. Her application was denied through the administrative hearing level. [JS 2-3]. An administrative hearing was conducted on April 29, 2004 before Administrative Law Judge Steven Chaffin (the "ALJ"). Plaintiff was

advised of her right to have a representative but elected to proceed without one. [AR 172]. The ALJ elicited testimony from plaintiff and a vocational expert. [AR 170-182].

In a written decision dated May 18, 2004, the ALJ found that plaintiff had bilateral avascuclar necrosis/osteoarthritis of the hips with some limitation of motion and leg pains, and low back pain secondary to her hip problems, with some degree of degenerative disc disease of the lumbosacral spine, but no radiculopathy. [AR 19]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform light work with occasional climbing, balancing, kneeling, crouching, and stooping, provided she did not have to climb ladders, ropes or scaffolds or continuously operate a foot pedal with either foot. [AR 19]. The ALJ determined that plaintiff's RFC did not preclude her from performing her past relevant work as a facility administrator or data entry and administrative clerk, and therefore that she was not disabled. [AR 19]. The Appeals Council denied plaintiff's request for review. [AR 4-6].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Effects of plaintiff's obesity**

Plaintiff contends that her weight, which ranged between 220 pounds and 238 pounds during the period from December 2000 to June 2003, places her in the "morbidly obese" category for a person of her height (5 feet, 4 inches).[1] [JS 5-6]. Plaintiff further contends that by failing to mention plaintiff's obesity in his decision, the ALJ did not satisfy his obligation to consider its effect on her documented musculoskeletal impairments. Defendant does not disagree with the contention that plaintiff was morbidly obese, but she argues that in the circumstances presented in this case, the ALJ did not have a duty to inquire about the effects of plaintiff's obesity.

The Ninth Circuit has held that the ALJ has a duty to determine the effect of a disability claimant's "obesity upon her other impairments, and its effect on her ability to work and general health," even where the claimant's obesity was not independently "severe" and was not explicitly alleged to be a "disabling factor." Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003)(reversing and remanding the Commissioner's decision that the claimant could perform

---

[1] Under the Commissioner's policy guidelines, obesity is measured by an individual's "Body Mass Index" ("BMI"), which

> is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m super2 ). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as "overweight" and a BMI of 30.0 or above as "obesity." [¶] The [National Institutes of Health] Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss.

SSR 02-1p, 2000 WL 628049, at *2. According to a calculator on the website of the Centers for Disease Control and Prevention website, plaintiff's BMI at a weight of 224 pounds is 38.3, placing her in the Level II "morbidly obese" category. See Body Mass Index: BMI Calculator available at http://www.cdc.gov/nccdphp/dnpa/bmi/calc-bmi.htm.

light work for a "multiple impairment analysis that explicitly accounts for the direct and marginal effects of the plaintiff's obesity during the period in question and that culminates in reviewable, on-the-record findings"). In Celaya, the Ninth Circuit held that the ALJ erred in not inquiring into the "interactive effects" of the claimant's obesity and her severe impairments of hypertension and diabetes for the following three reasons:

> First, it was raised implicitly in [the claimant's] report of symptoms. Second, it was clear from the record that [her] obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses. Third, in light of [the claimant's] pro se status, the ALJ's observation of [the claimant] and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

Celaya, 332 F.3d at 1183.

Celaya concerns a claim that was decided by the ALJ when obesity was a listed impairment. See SSR 02-1p, 2000 WL 628049, at *1 (noting that the final rule deleting listing 9.09 for obesity was effective on October 25, 1999). Although obesity is no longer listed as a separate impairment, the Commissioner's regulations and policy guidelines require adjudicators to consider whether obesity, alone or combined with other impairments, causes or exacerbates a claimant's functional limitations. See 20 C.F.R. Part 404, Subpart P, Appendix 1, ¶¶ 1.00Q, 3.00I & 4.00F(directing adjudicators to "consider any additional and cumulative effects of obesity" because obesity is "a medically determinable impairment often associated with" musculoskeletal, respiratory or cardiovascular impairments that "can be a major cause of disability in individuals with obesity," and stating that the combined effects of obesity with other impairments may be greater than expected without obesity); SSR 02-1p, 2000 WL 628049, at *3, *5 (stating that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "may increase the severity of coexisting or related impairments," and explaining that when evidence of obesity is found in the record, adjudicators must consider and explain whether obesity, alone or interacting with other impairments, causes any physical or mental limitations).

The facts of this case are analogous to those in Celaya. At about 213 pounds and 57 inches tall, Celaya, the claimant in that case, had a BMI of 44 compared to plaintiff's 38.4. Although Celaya's BMI placed her in the highest-risk obesity category, one level above plaintiff, both women tipped the upper end of the obesity scale. Like Celaya, plaintiff did not explicitly allege that she was obese or that obesity was a cause of her disability, but her obesity should have been apparent from evidence in the record and from the ALJ's observation of her during the July 3, 2003 hearing. [See AR 101 (noting plaintiff's height and weight and that her body type was "obese"); AR 129 (June 30, 2003 examination report stating that plaintiff was 5'4" tall and weighed 224 pounds)]. See Celaya, 332 F.3d at 1183 n.3 (noting that if the ALJ did not take note of evidence in the record documenting plaintiff's obesity or her weight and height, he nonetheless was made aware of it by meeting her during the hearing).

Similarly, obesity is recognized as a potentially aggravating or complicating factor in musculoskeletal impairments such as those alleged by plaintiff. She alleged back and joint pain and stiffness secondary to herniated discs, a pinched nerve, and arthritis. [AR 54-57]. The ALJ found that she had severe bilateral avascular necrosis/osteoarthritis of the hips with limitations in her range of motion and leg pain, low back pain secondary to her hip problems, and degenerative disc disease of the lumbar spine. [AR 17]. The Commissioner has specifically identified musculoskeletal disorders as impairments whose pathology and functional effects may be intensified by obesity. See 20 C.F.R. Part 404, Subpart P, Appendix 1, ¶ 1.00Q ("Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately."); SSR 02-1p, 2000 WL 628049, *3, *6 (stating that obesity is a risk factor that increases an individual's chances of developing chronic diseases of the musculoskeletal body systems, type II diabetes mellitus, hypertension, and osteoarthritis, among other things, and that the combined effects of those impairment with obesity "may be greater than might be expected without obesity").

In addition, the issue of plaintiff's obesity as a "disabling factor" was "raised implicitly in

[her] report of symptoms ...." Celaya, 332 F.2d at 1182. The ALJ noted that plaintiff alleged that she suffered from "severe hip and back pain." [AR 16]. She also complained of joint stiffness and numbness in her limbs. [AR 54-57, 61-62]. Plaintiff testified that her symptoms made it difficult to bathe and dress, and she did so slowly. She said she could not walk very well; did not walk, drive, or travel much due to discomfort; walked "very slowly"; found sitting for more than 20 or 25 minutes difficult; and while still working had to lay down during her lunch breaks and at other times. [AR 174-176].

Like Celaya, plaintiff was not represented during the administrative hearing.[2] The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel." Celaya, 332 F.3d at 1183 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). When the claimant was not represented by counsel during the administrative hearing, the ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (per curiam) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). Plaintiff was not illiterate like Celaya, but even with a high-school education [AR 16], it is still the case that plaintiff "very likely never knew that she *could* assert obesity as a partial basis for her disability." Celaya, 332 F.3d at 1183.

Plaintiff's pro se status, coupled with information in the record and the ALJ's observation of plaintiff during the hearing, "should have alerted him to the need to develop the record in respect to her obesity." Celaya, 332 F.3d at 1182; cf. Burch v. Barnhart, 400 F.3d 676, 681-682, 684 (9th Cir. 2005)(distinguishing Celaya because the claimant was represented by

---

[2] In Celaya, the Ninth Circuit said that the claimant "act[ed] pro se through the initial hearing," and it did not say whether or not she was represented during her administrative appeal of the ALJ's hearing decision. Celaya, 332 F.3d at 1179. Here, plaintiff acted pro se during the hearing and was represented by counsel before the Appeals Council. Because Celaya focused exclusively on the claimant's pro se status during the "initial hearing," defendant's attempt to distinguish Celaya is unpersuasive.

counsel during the hearing, and because the ALJ recognized that the claimant's obesity "likely contributed to her back discomfort" but properly concluded that her obesity did not impair her ability to work). The ALJ's decision gives no indication that he considered the interactive effects of plaintiff's obesity on her other impairments, even implicitly. Under <u>Celaya</u>, this case must be reversed and remanded for further development of the record and an evaluation of the effect of plaintiff's obesity on her impairments, subjective symptoms, and RFC, and for a new decision reflecting appropriate findings. See <u>Celaya</u>, 332 F.3d at 1183.[3]

### Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, defendant's decision is **reversed, and the case is remanded for further proceedings consistent with this memorandum of decision.**

**IT IS SO ORDERED.**

DATED: January 13, 2006

                                                                                      /s/
                                          ANDREW J. WISTRICH
                                          United States Magistrate Judge

---

[3] This disposition makes it unnecessary to consider separately plaintiff's contentions that the ALJ erred in evaluating the credibility of her subjective complaints and in posing a hypothetical question to the vocational expert that did not take her obesity into account.